## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DAMIAN DEPRIST McCALL,            )
                                 )
                 Petitioner,     )
                                 )
        vs.                      )        **Case No. CIV-09-927-D**
                                 )
RANDELL WORKMAN, Warden,         )
                                 )
                 Respondent.     )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the Petition[1] and filed the relevant state court trial transcripts (Tr.).  Petitioner has filed a Reply, and the matter is at issue.  For the following reasons, it is recommended that the Petition be denied.

## Procedural History

Petitioner was convicted after a jury trial of two counts of shooting with intent to kill after former felony convictions (Counts One and Two); assault and battery with a dangerous weapon after former felony convictions (Count Three); and possession of a firearm after former felony convictions, in the District Court of Oklahoma County, Case No. CF-2006-6889.  *See* Response, Ex. 3 (*McCall v. Oklahoma*, Case No. F-2007-824).  Petitioner was

---

[1]Reference herein to the page numbers of the Petition reflect the Court's Electronic Case Filing (ECF) pagination.

sentenced to forty years imprisonment on Count One, life imprisonment on Count Two, twenty-five years imprisonment on Count Three, and fifteen years imprisonment on Count Four, all sentences to be served concurrently.  *Id.*

Petitioner filed a direct appeal, raising two grounds for relief.  Response, Ex. 1.  The Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences.  Response, Ex. 3.

## Petitioner's Claims

Petitioner raises three grounds for habeas relief.  In Ground One, Petitioner argues that his constitutional rights were violated when the trial court refused his "competency request" and allowed him to proceed to trial unable to "aid his lawyer in his defense."  Petition, pp. 5-6.[2]  In Ground Two, Petitioner alleges that his trial attorney was ineffective for stipulating to his prior felony convictions and allowing the prior felony convictions to be admitted as exhibits without redacting references to his prior sentences.  *Id.*, pp. 7-9.  In his third ground for relief, liberally interpreted, Petitioner alleges that the OCCA's denial of his claims violated his right to due process.  *Id.*, pp. 10-11.[3]

_____

[2]Petitioner added an extra layer to his first claim, stating that the OCCA violated his constitutional rights when it denied the competency claim on appeal.  Petition, p. 5.  However, Petitioner realleged this claim against the OCCA in Ground Three.  *Id.*, pp. 10-11.  Thus, the first ground for relief has been interpreted to attack the underlying issue - the alleged lack of procedural and substantive due process surrounding Petitioner's competency to stand trial.

[3]Respondent believes that Petitioner has also raised a claim regarding his attorney's failure to object to prosecutorial misconduct in closing arguments.  Response, pp. 16-18.  Petitioner did raise this claim on direct appeal, *see* Response, Ex. 1, but did not raise it in his habeas petition.  Petition, pp. 1-17.

Petitioner seeks an evidentiary hearing, vacation of the convictions, and a new trial. *Id.*, p. 17.

## Standard Governing Habeas Review

When the OCCA denies a claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard. Under the AEDPA, habeas relief may be granted only if the OCCA's adjudication of the merits of a federal claim has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the OCCA's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the OCCA's decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable.'") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception

of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *See House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When the OCCA has not addressed a claim on the merits, this Court may exercise independent judgment. *See, e.g., Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

## <u>Analysis</u>

### I. <u>Ground One - Competency</u>

In Ground One, Petitioner contends that he was denied his constitutional rights when the trial court denied his "competency request" and allowed him to proceed at trial when he was unable to "aid his lawyer in his defense." Petition, pp. 5-6.

Respondent asserts that the OCCA's finding that there was "no bona fide doubt" as to Petitioner's competency was not contrary to or an unreasonable application of clearly established federal law. Response, pp. 3-11. For the following reasons, the undersigned recommends the denial of habeas relief on the claim raised in Ground One.

## A.  Entitlement to Procedural and Substantive Due Process

Competency claims can be based on substantive or procedural due process issues.  *See Walker v. Attorney General*, 167 F.3d 1339, 1343 (10th Cir. 1999).   "A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001) (citation omitted).  Petitioner appears to invoke both procedural and substantive concerns.

## B.  Procedural Due Process

Petitioner states that the trial court improperly refused his "competency request." Petition, p. 5.  In his Reply, Petitioner states that a "hearing was denied."  Reply, p. 1. However, the record demonstrates that the trial court held a threshold competency hearing, and it was constitutionally sufficient for purposes of procedural due process.

Competency for trial creates a factual question, and "[a] state court's factual finding of competency is presumed correct." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999). To rebut the presumption, Petitioner must present clear and convincing evidence.  *See id.* "A federal court may not issue a writ of habeas corpus unless the state courts' competency decisions were based on an unreasonable determination of the facts in light of the evidence." *Id.*

The federal court must apply the habeas standard in light of state law.  When competency is at issue, Oklahoma state law requires the "trial court [to] hold[] a threshold

hearing to determine whether to order a competency examination of a defendant by a medical expert." *Id.* at 1200; *see* Okla. Stat. tit. 22, § 1175.3(A)-(B) (Supp. 2005).  In this initial proceeding, "[t]he defendant must make a threshold showing of his incompetency," and the trial judge considers evidence of the "defendant's irrational behavior," "his courtroom demeanor," "and any medical opinion bearing on competency." *Bryson*, 187 F.3d at 1200-1201. The trial judge's "own observations of the defendant's comportment" can also suffice. *Id.* at 1201.

In the absence of any doubt that the defendant is competent, a full competency determination is not required and the criminal proceedings shall resume. *See id.* at 1200-1201; *see also* Okla. Stat. tit. 22, § 1175.3(C) (Supp. 2005).  If doubt exists regarding the defendant's competency, the trial court shall order an examination and may conduct a "full, 'post-examination' competency proceeding." *Bryson*, 187 F.3d at 1200 (citation omitted); *see* Okla. Stat. tit. 22, § 1175.4 (2001).

Here, Petitioner first raised concerns about his competency on the morning of trial. Tr., Vol. 1, 5.  The trial court expressed doubt about Petitioner's claim, stating that:

> [L]ast Friday this Court held a brief hearing in which I went over in great detail, I believe, as the record will reflect, with the options available to Mr. McCall, the possible punishments that Mr. McCall faces, in an attempt by me to make sure that Mr. McCall understood all of his available options and all of the available possibilities, were he to go to jury trial or accept the plea offer by the state and enter pleas of guilty.
>
> . . .
>
> At the conclusion of the hearing held last Friday, in which I attempted to determine and make sure that Mr. McCall understood all of his available

options, Mr. McCall made it quite clear to me and all parties that were present, including Mr. Armor, his attorney, that he wished to reject the offer made by the State of Oklahoma in his matter and proceed to jury trial this date.

I determined Friday, and I have nothing to change my position, that Mr. McCall fully understood all of his options. Mr. McCall was placed under oath by me and inquired only as to his understanding of the plea offer made by the state and all of his possible options available under the law. And I determined then, as I said, nothing that I've seen at this point at least changed my mind that Mr. McCall clearly, clearly understood all of his available options.

And I make that observation and finding based on my observations of Mr. McCall, his responses to the questions proposed by the Court. All of his answers were appropriate, based on the question. He did not, in my opinion, have any difficulty in understanding my conversations that I had with him. There was no hesitation in reference to my questions to him in providing the answers to me, based on his physical demeanor, his physical reactions and his verbal statements to the Court. Again, I saw nothing then, and at this point have seen nothing that would change my mind that he had anything other than a complete understanding of what he was facing potentially and what he was actually facing with the allegations.

*Id.*, 5-7.

Despite his observations regarding Petitioner's competency, the trial judge nevertheless conducted a "threshold" hearing. *Id.*, 7. Petitioner called Kester Mathenia who testified that from the ages of fourteen through seventeen, Petitioner had lived "off and on" with Mr. Mathenia. *Id.*, 8. Although Mr. Mathenia agreed that he lacked any first hand knowledge of Petitioner's mental health issues, the witness testified that he had been made aware that Petitioner had been diagnosed with bipolar disorder and took prescription medication "so he could calm down or something." *Id.*, 9, 12-13. Mr. Mathenia also stated that he was aware that Petitioner had spent "a week or two" in a mental facility. *Id.*, 9, 13-15. The witness testified that he called Petitioner "crazy," but that Petitioner "wasn't crazy

like crazy, crazy.  Just crazy." *Id.*, 17. Mr. Mathenia stated that he called Petitioner "crazy" because of Petitioner's "moving around, maybe talking to his self sometimes" and forgetfulness. *Id.*

Petitioner testified that he had been diagnosed bipolar and manic depressive and was suppose to be taking Depakote, Trazodone, and Risperdal to control the illnesses. *Id.*, 34. However, Petitioner claimed that he had not received any of his medication while in jail and in fact had been off his medication for approximately a year and a half. *Id.*, 26-27, 34. Petitioner explained that without his medication he felt "weird," like he couldn't think. *Id.*, 30. Petitioner described the feeling as not understanding and needing people to repeat things. *Id.* Petitioner stated that he didn't like telling things to people in authority, which included his own attorney, and that he had not told his attorney very much. *Id.*, 24, 34-35.  He answered "yes" when asked whether he believed his attorney was on the same side as the prosecution. *Id.*, 35.

However, when questioned by the trial judge, Petitioner was able to testify regarding: (1) his age and birthday; (2) the length of time he had spent in jail; (3) where he was housed in the jail; (4) that he was in jail because "they said he shot some people"; (5) his attorney's name and how many times he had met with his attorney; (6) his participation in a preliminary hearing; (7) the prosecutor's job "to go against" him and his attorney's job "to protect" him; (8) the jury's makeup of "twelve people" and duty to "make a decision" between "guilty or not guilty"; (9) the terms of the plea offer, which included "twenty years" to run concurrently; (10) his desire to go to trial "because [he] didn't do it"; (11) his placement in

8

a mental facility, Oklahoma Youth Center, in 2002; (12) his prior incarceration at the "COJAC" for a juvenile conviction involving stolen money; (13) the name of the current president; (14) the fact that he got along with his attorney and understood that they were not angry with each other; (15) his memory of the the judge explaining the plea offer to him; (16) his understanding that he faced a possible punishment of life imprisonment; (17) the "85 percent" rule which meant "a lot of time"; (18) his mother's new last name; (19) the ages of his brothers and sisters; (20) medical requests he filled out at the jail; (21) the lack of "big words" used by either the trial judge or his attorney; and (22) his affirmation that he understood what his attorney had talked to him about. *Id.*, 18-33.

Petitioner's attorney informed the trial court that Petitioner had been unresponsive to questions, was emotionally crippled, and had been unable to give information to aid in his case. *Id.*, 39-41. However, the attorney admitted that Petitioner had been able to corroborate details provided by Petitioner's wife. *Id.*, 41. Further, the attorney acknowledged that he did think Petitioner had been competent to accept a plea offer. *Id.*, 42.

Having considered all of the evidence, the trial court stated to defense counsel:

> [Y]ou state in your motion that talking to him is like talking to a brick wall . . . [b]ut I don't think that in and of itself indicates incompetency.
>
> . . .
>
> [T]he young man is very articulate. He has responded appropriately to every question I've asked. He clearly has an understanding of your role, the DA's role, my role, and the jury's function. He knows what the options that the jury have to choose from. He knows what the allegations are. He's been able to corroborate to you information concerning a potential alibi defense. He's been very well-behaved. There's been no outburst or no anything

9

inappropriate as far as his behavior each and every time he's appeared in front of me.

*Id.*, 44-45.

Finally, the trial court ruled:

As I've stated earlier, Friday I had a lengthy conversation with Mr. McCall in reference to the possibilities and his understanding of the plea, and I saw nothing, not even a hint of an indication that Mr. McCall didn't understand what I was talking about.  He did say today, as Mr. Armor has pointed out, that Mr. Armor was kind of, and these are my words, not Mr. McCall's, in cahoots with the prosecutor.  But I interpret that being of a misunderstanding of the question . . . misunderstanding of the phraseology and words used, because when I initially asked him in my conversations what Mr. Armor's job was, he said to help me, to defend me, words to that effect.  So he has an understanding, I believe, as to what Mr. Armor's job is.

. . .

I have witnessed nothing that tells me or even gives me a slightest degree of concern about Mr. McCall's competency.  In fact, just the opposite. He has a clear understanding, as the record reflects, of what everybody's role in the process is.  He understands what the jury can and can't do.  He knows what their two options are.  He has a clear feeling, and his facial expressions and body language changes when he indicates to me he wants a trial because he's innocent, he didn't do it.  And, clearly, there's an indication by Mr. McCall, both verbally and physically that he has a true belief that he's innocent.

. . .

He's been able, by Mr. Armor's own admissions, to at least corroborate a possible alibi defense, which if believed by the jury, will set him free.  So I don't see any indications, and nor have I, in my opinion, with all due respect, been presented any list, be it even a short list, of things that rise to the level, in my opinion, of a serious doubt as to this defendant's competency.

He was clearly competent Friday to enter a plea, and there's nothing in my opinion contained in this record that has changed since Friday, other than he rejected the plea offer.  There's no evidence that there's any serious medical

or psychological illness . . . .  And I don't believe there's anything in this record that rises to the level that would necessitate the continuation of this trial.

*Id.*, 47-50.

As illustrated above, the trial court provided Petitioner with the necessary "threshold" competency hearing and determined that examination by a medical expert and full "post-examination" hearing was not required.  The OCCA agreed, and this was a reasonable determination of the facts in light of the evidence.  The undersigned finds that Petitioner has not provided clear and convincing evidence to the contrary, and it is therefore recommended that his claim involving procedural due process be denied.  *See supra* p. 5.

### C.  **Substantive Due Process**

Petitioner's claim also fails under a substantive due process review.

To prevail on this claim, Petitioner must "demonstrate by 'clear and convincing evidence' a 'real, substantial and legitimate doubt' as to his competence to stand trial." *Rogers v. Gibson*, 173 F.3d 1278, 1291 n.13 (10th Cir. 1999), *modified on other grounds*, *McGregor v. Gibson*, 248 F.3d 946, 953-54 (10th Cir. 2001).

Because the trial judge found that no doubt existed regarding Petitioner's competency, habeas relief is available only if he presents clear and convincing evidence of his actual incompetency at the time of his trial.  *See* 28 U.S.C. § 2254(e)(1) (2000).  Petitioner relies on: (1) evidence that he did not understand every question, and (2) the unavailability of his prescribed "psychotrophic drugs."  Petition, p. 5; Reply, pp. 2-5.  However, competency is determined by examining "the totality of the circumstances:  all evidence should be

11

considered together, no single factor 'stands alone.'" *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001) (citation omitted). Here, the trial court considered the evidence presented by Petitioner, but ruled that Petitioner understood the nature of the charges and was able to assist his attorney. *See supra* pp. 7-11. Petitioner's bald reassertion of the evidence presented to the trial court does not demonstrate by clear and convincing evidence that he was actual incompetent at the time of his trial. Thus, Petitioner is not entitled to habeas relief based on a deprivation of substantive due process. *See Bryson*, 187 F.3d at 1204.

For the above stated reasons, the undersigned recommends the denial of habeas relief on the claims raised in Ground One.

## II. Ground Two - Ineffective Assistance of Counsel

In Ground Two, Petitioner alleges that his trial attorney was ineffective for: (1) stipulating to his three prior convictions which were used to enhance his sentences,[4] and (2) failing to object or request redaction when the trial court allowed the use of the convictions as exhibits without removing information about the prior sentences. Petition, pp. 7-8.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order to establish that counsel was ineffective, a habeas petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial. *See id.* at 688, 692. Prejudice is shown if there is "a reasonable probability that, but for counsel's

---

[4]Petitioner did not raise this claim on direct appeal; however, rather than dismissing the claim as unexhausted, the Court may deny it on the merits. *See* 28 U.S.C. § 2254(b)(2) (noting that an unexhausted claim may be denied on the merits).

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## A. <u>Stipulation</u>

Petitioner's trial attorney stipulated that: (1) a fingerprint technician from the Sheriff's office would testify that Petitioner's fingerprints matched the fingerprints of the defendant in Case Nos. CF-2003-311, CF-2004-2846, and CF-2005-4983;[5] (2) court clerk representatives would testify that the judgments were final in Case Nos. CF-2003-311, CF-2004-2846, and CF-2005-4983, and that the defendant had been represented by counsel in those cases; and (3) Petitioner was convicted on Count I of Case No. CF-2005-4983 for burglary in the second degree. Tr., Vol. 3, 516-17, 534-35.

Petitioner is clearly disappointed that his attorney stipulated to these facts; however, Petitioner does not dispute the truth of these stipulations, or that the witnesses would have testified accordingly. As a result, Petitioner has failed to establish a reasonable probability that the outcome of his trial would have been different had his attorney required the State to put on this evidence, rather than having stipulated to the facts. Therefore, the undersigned recommends that this claim be rejected on the merits under *Strickland's* prejudice standard.

## B. <u>Failure to Redact Exhibits</u>

Evidence of Petitioner's prior convictions was admitted during the sentencing stage of trial. These exhibits contained information regarding Petitioner's prior sentences, and, according to Petitioner, also contained information regarding probation that he received on

---

[5]Petitioner's prior convictions in these cases were used to enhance his punishment in the instant case. Tr. Vol. 3, 531-32.

some of the sentences.[6]  According to Petitioner, this information would have alerted the jury that he "hadn't completed the sentences for which he was convicted" thus possibly resulting in a longer sentence for the present case.[7]  Petition, pp. 8-9.

Applying *Strickland,* the OCCA rejected this claim on the merits, finding that Petitioner had failed to show any prejudice resulted from the trial attorney's failure to request redaction of the sentences from the prior convictions.  Response, Ex. 3, pp. 3-4 & n.4.  As Respondent argues, this decision was reasonable.  Petitioner was convicted of four serious felonies, the maximum sentence for each of which was life imprisonment.  Petitioner received less than life on three of the four counts.  Tr., Vol. 3, 538-39, 547-48.  Under such circumstances, the OCCA's finding that Petitioner had failed to show prejudice based on his attorney's failure to request redaction of the sentencing information was reasonable.  *See Dockins v. Hines*, 374 F.3d 935, 340 (10th Cir. 2004) (refusing to disturb the district court's holding that the OCCA reasonably rejected claim that trial attorney failed to seek redaction of sentencing information from prior convictions).

---

[6]Neither Petitioner nor Respondent provided the Court with a copy of these exhibits, and they do not appear in the original record.  Nevertheless, neither party disputes the other's description of the sentencing information contained therein.

[7]Petitioner presents his claim under the guise of ineffective assistance of counsel.  Petition, p. 7.  However, he also suggests that the admission of unredacted prior convictions "tainted the fairness and reasonableness of the jury."  *Id.*, p. 8.  To the extent that this statement could be liberally construed to invoke a due process claim, it should be rejected.  *See Battle v. Sirmons*, 304 Fed. Appx. 688, 691 (10th Cir. Dec. 22, 2008) ("[W]e find the failure to redact sentencing information from the list of prior convictions placed before the jury to fall short of implicating fundamental trial fairness.").

### III. __Ground Three - Due Process__

Liberally interpreted, Ground Three contains an allegation that the OCCA violated Petitioner's due process rights when it denied his direct appeal.  Petition, pp. 10-11.  However, Petitioner lacks a constitutional right to an appeal and cannot therefore assert a valid claim for habeas relief based on the OCCA's alleged denial of his due process rights on appeal.  *See Hatch v. State*, 58 F.3d 1447, 1460 (10th Cir. 1995) (rejecting a claim that the OCCA independently denied petitioner's due process rights in denying appeal);[8] *Matthew v. Sirmons*, 146 Fed. Appx. 295, 297 (10th Cir. Aug. 22, 2005) (same).  Thus, is it the undersigned's recommendation that Petitioner's claims in Ground Three be denied.

### __RECOMMENDATION__

Based upon the foregoing analysis, it is recommended that the Petition for a Writ of Habeas Corpus be denied.  If this recommendation is adopted, Petitioner's request for an evidentiary hearing will be moot.

Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2).  Any such objection must be filed with the Clerk of this Court by the 20th day of July, 2011.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  *Moore v. United*

---

[8]Some cases suggest that *Hatch* was overruled in *Daniel v. United States*, 254 F.3d 1180 (10th Cir. 2001).  *See, e.g., Woodberry v. McKune*, 172 Fed. Appx. 848, 850 (10th Cir. Mar. 27, 2006).  However, a reading of *Daniel* verifies that it was overruling a different case, brought by the same plaintiff, seeking permission to file a second or successive petition.  *See Daniel*, 254 F.3d at 1188 n. 1.

15

*States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of June, 2011.

_____

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE